**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-1826**

AMBER L. AYRES, individually and as wife and guardian of
the person and property of; RICHARD C. AYRES, a Disabled
Adult,

Plaintiffs – Appellants,

v.

MAYOR AND CITY COUNCIL OF THE DISTRICT OF COLUMBIA; UNITED
STATES OF AMERICA,

Defendants – Appellees,

and

DAN TANGHERLINI, Director, District of Columbia Department
of Transportation; NORMAN Y. MINETA, Secretary, United
States Department of Transportation; DARRELL LAMONT
SELLERS; ESTATE OF JOHN W. HARLEY,

Defendants.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William D. Quarles, Jr., District
Judge.  (1:04-cv-04068-WDQ)

Argued:  May 16, 2008              Decided:  August 8, 2008

Before NIEMEYER, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Francis A. Pommett, III, Baltimore, Maryland, for Appellants. Todd Sunhwae Kim, OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA, Washington, D.C., for Appellees. **ON BRIEF:** Linda Singer, Attorney General for the District of Columbia, Edward E. Schwab, Deputy Solicitor General, Karen A. Weiss, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA, Washington, D.C., for Appellee Mayor and City Council of the District of Columbia. Peter D. Keisler, Assistant Attorney General, Mark B. Stern, Eric J. Feigin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee United States.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Amber L. Ayres filed a suit against the Mayor and City Council of the District of Columbia (collectively "the District") and the United States on behalf of herself and her husband, Richard C. Ayres (collectively "Ayres"), who was severely injured while traveling on an interstate highway in the District. The district court dismissed all claims against the District and the United States. On appeal, Ayres contends that the district court erred. After thoroughly reviewing Ayres's assignments of error, we affirm the district court's dismissal.

I.

On January 3, 2002, at approximately 2:51 p.m., Richard C. Ayres was driving his 1998 Ford Ranger northbound on I-295 at Blue Plains, S.W. in Washington, D.C., in the right-hand lane. At the same time, Darrell L. Sellers was traveling southbound on I-295 when he lost control of his vehicle and crossed the grass median strip, striking John W. Harley's Ford Escort, instantly killing him. Harley's car collided with Mr. Ayres's car, severely injuring him.

Amber Ayres, on behalf of her husband and herself, filed a seven-count complaint in the United States District Court for the District of Maryland. The United States filed a motion to dismiss under Rule 12(b)(1) and (6) of the Federal Rules of

3

Civil Procedure, alleging, *inter alia*, that it was immune from this type of action under the discretionary function exception to the Federal Tort Claims Act ("FTCA") and that the court lacked subject matter jurisdiction. The District filed a motion to dismiss and/or for summary judgment, arguing, *inter alia*, that under the District's law it was immune from such suits.

In response to the United States's arguments, Ayres conceded that her claims for negligent design and construction were barred; however, she contended that the remaining claims regarding failure to place warning signs and/or guardrails were not barred because they were not susceptible to a policy judgment nor did they involve the exercise of political, social, or economic judgment. And in response to the District's argument, Ayres contended that, even though the District's law barring most of her claims would be applicable under the doctrine of *lex loci delicti*, Maryland's public policy exception applied and therefore the district court was required to use Maryland law which allows such suits against local governments. The district court granted the District's and United States's motions, and Ayres timely appealed to this court.

II.

A.

On appeal, Ayres contends that the district court erred by determining that the District's law prohibiting suit against it for negligent design and construction of its roadways did not violate Maryland's public policy exception to the doctrine of *lex loci delicti*. If we agree, then the district court should have applied Maryland's law. We review a trial court's determination of state law de novo. Roe v. Doe, 28 F.3d 404, 407 (4th Cir. 1994) (citing Salve Regina College v. Russell, 499 U.S. 225, 231-232 (1991)).

Under the District's law, the District may not be sued for discretionary functions such as highway planning and design decisions. Pace v. D.C., 498 A.2d 226, 228-229 (D.C. 1985). In contrast, Maryland courts have held that counties and municipalities may be found liable for construction, maintenance and control of their roads. Montgomery County v. Vorhees, 86 Md. App. 294 (Md. Ct. Spec. App. 1991). Therefore, there is a conflict between Maryland law and the District's law; under Maryland law, Ayres would be permitted to sue whereas under the District's own law, she would not.

Maryland follows the traditional rule of *lex loci delicti* in deciding conflict of law questions, Motor Club of America Ins. Co. v. Hanifi, 145 F.3d 170 (4th Cir. 1998), and will

5

therefore apply the substantive tort law of the jurisdiction where the wrong occurred. Maryland courts may refuse to enforce the law of a foreign jurisdiction when that law violates Maryland public policy. Haunch v. Connor, 295 Md. 120 (1983). Maryland public policy is "no more and no less than what is believed by the courts and the legislature to be in the best interest of the citizens of [Maryland]." Linton v. Linton, 46 Md. App. 660, 663 (1980). Maryland courts have found that public policy determinations are normally within the province of the legislative branch. Hanifi, 145 F.3d at 180.

Maryland public policy is not violated when the foreign law is merely different from Maryland law. Id. Instead, the party seeking to overrule the principle of *lex loci delicti* on public policy grounds must carry the "heavy burden" of showing that the foreign law violates a powerful public policy interest. Hanifi, 145 F.3d 170. Maryland courts generally will not overrule the principle of *lex loci delicti* unless there is a contrary Maryland statute. Id. Ayres sets forth no Maryland case or statute that supports her position that honoring the District's governmental immunity against suits for highway-related negligence would violate Maryland public policy at all, let alone a public policy of such stature that it should override another jurisdiction's view of the law regarding events in that jurisdiction. Because the injury to Mr. Ayres and the alleged

6

tortious act occurred in the District, we conclude the district court's decision to apply the District's law was correct.

B.

Next, Ayres contends that by dismissing all of her claims the district court erred because even when applying the District's law it provides for a waiver of immunity to alleged negligent maintenance of a roadway. Again, we review a trial court's determination of state law de novo. Roe, 28 F.3d at 407.

While we agree that the District waived its immunity against claims for negligent maintenance of a roadway, see Pace, 498 A.2d at 226, we affirm the district court's decision to dismiss because Ayres failed to put the District on notice of a potential claim as is required pursuant to D.C. Code § 12-309[*]. Ayres argues that the police report from the scene of the accident served as constructive notice of a potential claim. However, this is unpersuasive because the police report indicated that the police officers saw possible driver error and that they would investigate that possible cause. The police

---

[*]D.C. Code § 12-309 states: "An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section."

7

officers never evinced intent to investigate any potential cause relating to maintenance of I-295. The police report did not reasonably suggest a basis for the District's liability, and thus under the District law, was insufficient to satisfy § 12-309's notice requirement. See Washington v. D.C., 429 A.2d 1362, 1366 (D.C. 1981) ("...the written notice or police report must disclose both the factual cause of the injury and a reasonable basis for anticipating legal action as a consequence. Such notice would suffice, therefore, if it either characterized the injury and asserted the right to recovery, or without asserting a claim described the injuring event with sufficient detail to reveal, in itself, a basis for the District's potential liability.").

C.

Finally, Ayres argues the district court erred in holding that the United States was immune from suit under the discretionary function exception to the FTCA because the federal regulations for safety are proprietary rather than discretionary. We agree with the district court that a decision by the Secretary of Transportation to provide federal funds for the construction of I-295 is a discretionary act that cannot give rise to liability under FTCA.

The Federal Aid Highway Act directs the Secretary to "promulgate guidelines designed to assure *** that the final

8

decisions on [whether to fund a highway] project are made <u>in the best overall public interest</u>, taking into consideration the need for fast, safe and efficient transportation, public services, and the costs of eliminating or minimizing," *inter alia*, the project's possible "adverse economic, social, and environmental effects."  23 U.S.C. § 109(h) (emphasis added).  The Secretary has taken these (and other) factors into account in issuing "minimum criteria" that a state or District highway project must meet to receive federal funds, while retaining the agency's authority to create ad hoc exceptions to those criteria "where conditions warrant."  23 C.F.R. § 625.3(f).

Funding decisions under this scheme fall within the heart of the discretionary function exception.  As the Supreme Court has explained, when "Congress has delegated the authority *** to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception."  <u>United States v. Gaubert</u>, 499 U.S. 315, 323 (1991).  This Court has recognized that "this idea [is] equally applicable to the actions of an agency charged with administering a public works project." <u>Baum v. United States</u>, 986 F.2d 716, 722 (4th Cir. 1993). Congress's delegation of authority here leaves "no doubt" that the Department of Transportation's funding decisions are shielded

from tort liability. As this Circuit's precedent provides, funding decisions meet the two principal criteria of discretionary function analysis, because they both involve "'an element of judgment or choice'" and are "'based on considerations of public policy.'" Suter v. United States, 441 F.3d 306, 310-11 (4th Cir. 2006) (quoting Berkovitz v. United States, 486 U.S. 531, 536-37 (1988)).

Ayres does not identify "any mandatory federal statute, regulation, or policy prescribing a specific course of action" that the government should have followed in this case. Baum, 986 F.2d at 720. Indeed, no mechanistic function could evaluate and balance the various criteria that inform a highway-funding decision; "[t]he sheer number of factors involved" alone "suggests that Congress intended these decisions to be made as an exercise of judgment and choice." Rothrock v. United States, 62 F.3d 196, 199 (4th Cir. 1995); see 23 U.S.C. §§ 109(a), (h); 23 C.F.R. §§ 625.2(a), 625.3(a) (discussing factors). Safety is but one of those many factors, and where federal officials "have more than safety in mind" in making a particular decision, the discretionary function exception bars a tort suit, such as this one, in which plaintiffs suggest that the government should have "place[d] greater emphasis upon safety." Bowman v. United States, 823 F.2d at 1393, 1395 (4th Cir. 1987).

10

Furthermore, in expressly requiring that funding decisions consider the "economic, social, and environmental effects" of a particular project, see 23 U.S.C. § 109(h), never could Congress have more explicitly conveyed that such decisions are "grounded in social, economic, and political policy," Gaubert, 499 U.S. at 323 (internal quotation marks omitted). Ayres mistakenly suggests that the Government must show that policy considerations informed the specific decision to fund I-295 (Pl. Br. 21). The proper focus in the discretionary function inquiry is not on a particular act, but instead "on the nature of the actions taken and on whether they are susceptible to policy analysis." Suter, 441 F.3d at 311 (quoting Gaubert, 499 U.S. at 325). The "nature" of the decision here--evaluating whether or not the funding is "in the best overall public interest," 23 U.S.C. § 109(h)--plainly implicates substantial policy concerns and cannot be challenged under the FTCA.

Lastly, Ayres requests that this Court certify questions of law to the Maryland Court of Appeals. We deny that request because we conclude that Maryland law is clear and supports the district court's decision.

III.

For the foregoing reasons, we affirm the district court's decisions.

<u>AFFIRMED</u>