*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SHIRLEY A. STEWARD, Personal Representative of the Estate of LEAH F. DAVIS, and WARREN DAVIS, | ) ) ) ) | Supreme Court No. S-14476 |
| | ) | Superior Court No. 4FA-07-02278 CI |
| Appellants, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| STATE OF ALASKA, | ) | No. 6892 - April 11, 2014 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Allen Vacura, Stepovich & Vacura Law Office, Fairbanks, for Appellants. Dario Borghesan, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I.       INTRODUCTION

Following a fatal car crash, the estate and the surviving spouse of the car's driver sued the State of Alaska under separate negligence theories. The superior court

granted the State summary judgment on one claim, and a jury found in the State's favor on the remaining claim. The estate and the surviving spouse appeal. Because we see no prejudicial error, we affirm the superior court's judgment.

## II.  FACTS AND PROCEEDINGS

Leah Davis was driving north on the Richardson Highway. Near milepost 330, a southbound United States Postal Service vehicle crossed the centerline and struck Davis's car. The crash caused Davis's car to skid across the southbound lane, cross the shoulder, and enter the Tanana River. The car submerged and Davis drowned. Alaska State Trooper Joseph Harris led the accident investigation at the site.

There was no guardrail at milepost 330 at the time of the accident. During a 1994 erosion control project along the highway and Tanana River, the Alaska Department of Transportation and Public Facilities removed a then-existing guardrail. The project's study report concluded that the redesigned highway shoulder and riverbank would "provide adequate clear zone width to eliminate [the] guardrail." The study also stated that "the engineer will make a field decision" regarding the erosion control design to be used and that the "existing guardrail [is] to be removed." The State did not replace the guardrail.

Shirley Steward, the personal representative of Davis's estate, and Warren Davis, Davis's surviving spouse, filed a lawsuit against the State.[1] Steward alleged the State negligently failed to reinstall a guardrail at milepost 330 and negligently failed to construct and maintain an adequate clear zone — the area alongside a highway for use by errant vehicles — in lieu of a guardrail.

The superior court granted summary judgment to the State on the guardrail

---

[1]     We hereafter use "Steward" to refer to both the personal representative and Warren Davis.

claim, determining that removing the guardrail was a policy decision. The court concluded that the policy decision entitled the State to discretionary function immunity. But the superior court denied summary judgment on the clear zone claim.

The superior court held a trial on the remaining claim. During the earlier summary judgment proceedings, the State had submitted an affidavit from Trooper Harris asserting that based on his observation of the tire tracks at the accident scene, Davis's car went airborne 15 feet into the clear zone, hit the ground once, and then bounced into the river. Steward called Trooper Harris to testify during her case in chief. Over Steward's objection, the superior court excluded Steward's expert witness from the courtroom during Trooper Harris's testimony. The superior court concluded that Trooper Harris was not providing expert testimony and that the presence of Steward's expert would not help Steward's case.

In response to questioning from Steward's attorney, Trooper Harris testified that "the vehicle had to have gone airborne" before ending up in the river. At the end of the trial, the jury returned a verdict for the State, concluding that the State acted negligently but that the negligence was not a substantial factor causing Davis's death.

Steward appeals, arguing the superior court erred by: (1) granting summary judgment to the State on the guardrail claim based on discretionary function immunity; (2) allowing Trooper Harris to testify at trial that Davis's car went airborne before landing in the river; and (3) excluding Steward's expert witness from the courtroom during Trooper Harris's testimony.

## III. STANDARD OF REVIEW

The applicability of discretionary function immunity for a governmental act

is a question of law that we review de novo.[2]  Grants of summary judgment are also reviewed de novo.[3]  "We review a trial court's decision to admit or exclude evidence, including expert witness testimony, for abuse of discretion . . . ."[4]  Trial court decisions to exclude witnesses also are reviewed for abuse of discretion.[5]

## IV.  DISCUSSION

### A.  The Superior Court Did Not Err By Granting Summary Judgment To The State Under Discretionary Function Immunity.

Although "immunity from suit is a fundamental aspect of the sovereignty" of states,[6] Alaska "abolished the common law doctrine of sovereign immunity by statute."[7]  Alaska Statute 09.50.250 partially waives the State's immunity from lawsuits by allowing plaintiffs to bring contract, quasi-contract, or tort claims against the State. But the Alaska Legislature provided an exception, retaining the State's sovereign immunity in tort cases where the action is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state

---

[2]     *Kiokun v. State, Dep't of Pub. Safety*, 74 P.3d 209, 212 (Alaska 2003) (citing *Angnabooguk v. State, Dep't of Natural Res.*, 26 P.3d 447 (Alaska 2001); *Kooly v. State*, 958 P.2d 1106, 1107 (Alaska 1998)).

[3]     *Kalenka v. Infinity Ins. Cos.*, 262 P.3d 602, 607 (Alaska 2011); *Nielson v. Benton*, 903 P.2d 1049, 1052 (Alaska 1995) (citing *Tongass Sport Fishing Ass'n v. State*, 866 P.2d 1314, 1317 (Alaska 1994)).

[4]     *Cartee v. Cartee*, 239 P.3d 707, 721 (Alaska 2010) (citing *Nelson v. Progressive Corp.*, 976 P.2d 859, 865 n.9 (Alaska 1999)).

[5]     *State, Dep't of Corr. v. Johnson,* 2 P.3d 56, 59 (Alaska 2000) (citing *Fairbanks N. Star Borough v. Lakeview Enters., Inc.,* 897 P.2d 47, 58 (Alaska 1995)).

[6]     *Alden v. Maine*, 527 U.S. 706, 713 (1999).

[7]     *Estate of Arrowwood ex rel. Loeb v. State*, 894 P.2d 642, 644 (Alaska 1995) (citing AS 09.50.250).

agency or an employee of the state, whether or not the discretion involved is abused."[8] We have called this narrow retention of sovereign immunity the "discretionary function exception."[9]

Discretionary function immunity "seeks to ensure that private citizens do not interfere with or inhibit the governing process by challenging through private tort actions basic governmental policy decisions."[10] When determining whether discretionary immunity applies to a specific act, "we distinguish between decisions that involve basic planning or policy and those that are merely operational in the sense that they implement plans or carry out policy."[11] Planning decisions "fall under the exception because they involve formulation of basic policy" including consideration of financial, political, economic, or social effects of the policy.[12] "Normal day-by-day operations of the government" are not planning decisions and are not entitled to immunity under the discretionary function exception.[13]

We have explained that "the decision of whether or not to install a guardrail

---

[8]     AS 09.50.250(1).

[9]     *State v. Abbott*, 498 P.2d 712, 716 (Alaska 1972).

[10]    *Japan Air Lines Co. v. State*, 628 P.2d 934, 936 (Alaska 1981) (citing *Adams v. State*, 555 P.2d 235, 244 (Alaska 1976)).

[11]    *Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 976 (Alaska 2005) (citing *Johnson v. State*, 636 P.2d 47, 64 (Alaska 1981)).

[12]    *Estate of Arrowwood*, 894 P.2d at 644-45; *Abbott*, 498 P.2d at 720.

[13]    *Abbott*, 498 P.2d at 720 (quoting *Swanson v. United States*, 229 F.Supp. 217, 220 (N.D. Cal. 1964)).

is a discretionary act covered by AS 09.50.250."[14]  Whether to install a guardrail "involve[s] planning, an assessment of competing priorities, and a weighing of budgetary considerations."[15]  In *Industrial Indemnity Co. v. State*, we affirmed a grant of summary judgment to the State for its decision not to build a guardrail, explaining that the decision was "one of policy" and that "an affirmative decision to go ahead with the installation had to be made at the discretionary level in order to advance the chain of events to the operational stage."[16]  We later applied that precedent in *Wells v. State* to affirm a grant of summary judgment on a motorist's negligence claims regarding the State's failure to install a guardrail.[17]

Steward asserts that the decision not to install a guardrail is not always a planning decision; the decision *could* be made at the operational stage, at which point it is not a discretionary function.  She attempts to distinguish this case from *Wells* and *Industrial Indemnity* in this sense, contending that the State's guardrail decision was made during the implementation and operational stage of construction, not the planning stage.[18]  But Steward fails to point to any facts in the record supporting that argument.

---

[14]     *Wells v. State*, 46 P.3d 967, 969 (Alaska 2002); *accord Indus. Indem. Co. v. State*, 669 P.2d 561, 566 (Alaska 1983).

[15]     *Indus. Indem.*, 669 P.2d at 564.

[16]     *Id.* at 563.

[17]     46 P.3d at 969.

[18]     Steward argues the State has not met its burden of showing its decision to remove the guardrail was made at the planning stage and, therefore, the State's decision is not entitled to discretionary function immunity.  She suggests the State must explain "whom, when, and how the discretionary decision was made and the details of that decision" to meet its burden.  But we rejected the argument that the State must "show how an individual decision was made" to be entitled to discretionary immunity in

(continued...)

And the record indicates the opposite conclusion: the decision not to replace the guardrail was made in the design study and approval documents. The State decided in those documents that the erosion control design would "provide adequate clear zone width to eliminate guardrail," and the "existing guardrail [is] to be removed." These statements indicate the State's decision to eliminate the guardrail was made at the planning stage and is thus entitled to discretionary function immunity. Therefore, the superior court's grant of summary judgment on this claim is affirmed.

**B.      The Superior Court Did Not Err By Allowing Trooper Harris To Testify About The Crash.**

During the summary judgment proceedings, Steward submitted an affidavit from an expert witness stating that the clear zone was too narrow and rough for safe vehicle travel. With its summary judgment reply, the State attached Trooper Harris's affidavit asserting that Davis's vehicle went airborne and thus the composition of the clear zone did not matter. Steward submitted a surreply with an affidavit from John Shover, Steward's accident reconstruction expert, contesting Trooper Harris's conclusion that Davis's vehicle went airborne.

After the superior court denied summary judgment on the negligence claims regarding the clear zone, the case went to a jury trial. As part of her case in chief, Steward called Trooper Harris to testify. Steward requested the court allow Shover to

---

**18**      (...continued)
*Industrial Indemnity*. 669 P.2d at 566 n.11; *see also State, Dep't of Transp. & Pub. Facilities v. Sanders*, 944 P.2d 453, 458 n.5 (Alaska 1997) ("[S]ome jurisdictions require that a state or local governmental unit seeking to obtain the protection of discretionary function immunity show that a considered policy evaluation actually took place. Alaska does not require such a showing." (alteration in original) (citations and internal quotation marks omitted)). At most, the State may bear the burden of establishing its decision was made at the planning stage. We do not need to decide if the State bears such a burden because, even if it does, the State met that burden in this case.

remain in the courtroom during Trooper Harris's testimony, arguing that because Trooper Harris was a hybrid witness Shover should be allowed to stay and hear the testimony. The superior court concluded that Trooper Harris was not providing expert opinion, simply a "description of what he saw at the scene" and "lay opinion of a police officer." The court ruled that Shover would be barred from the courtroom during Trooper Harris's testimony.

When questioning Trooper Harris about Davis's vehicle tire tracks ending 15 feet into the clear zone, Steward's attorney asked, "[a]nd then what did the car do in your . . . opinion?" Trooper Harris responded that "the vehicle had to have gone airborne." Steward's attorney continued questioning Trooper Harris and then called Shover as the next witness to give his expert testimony about the accident and investigation.

On appeal, Steward contends that Trooper Harris's testimony was inadmissible because Trooper Harris was not qualified to provide expert opinions, did not have a sufficient factual basis to form an opinion about the crash, and was improperly characterized as a lay witness. But Steward did not object to the superior court's characterization of Trooper Harris as a lay witness at trial. Steward went on to elicit Trooper Harris's testimony during her case-in-chief and did not object to its substance.[19] Because Steward failed to object to Trooper Harris's testimony in the superior court, we conclude she waived her right to appeal the testimony's admissibility.[20]

---

[19] Steward asserts that she "objected to the testimony of Trooper Harris — seeking to exclude that testimony at trial." While Steward twice argued to the superior court that Trooper Harris was an expert witness, she did so solely to justify use of her own expert, Shover. In neither situation did Steward ask to exclude Trooper Harris's testimony or argue that allowing him to testify as a lay witness would be error.

[20] *See Sherbahn v. Kerkove*, 987 P.2d 195, 199 (Alaska 1999) (citing Alaska (continued...)

### C. The Superior Court's Error In Excluding Steward's Expert Witness During Trooper Harris's Testimony Was Harmless.

Steward's final argument is that the superior court erred by excluding Shover from the courtroom during Trooper Harris's testimony. Steward argues that Shover should have been allowed to hear Trooper Harris's testimony to help present rebuttal testimony and respond to points made by Trooper Harris. Although we agree with Steward that the superior court's exclusion of Shover from the courtroom during Trooper Harris's testimony was error, because Trooper Harris's trial testimony was the same as his earlier affidavit statements, which had been reviewed by Shover, we conclude that the error was harmless.[21]

Alaska Evidence Rule 615 provides that a court may order the exclusion of a witness from the courtroom during other testimony at the request of any party. The rule, however, contains an exception for witnesses "whose presence is shown by a party to be important to the presentation of the party's cause."[22] Thus, the court may not exclude a witness, such as an "expert needed to advise counsel in the management of litigation," if that witness plays an important role in the party's presentation of its case.[23]

---

[20] (...continued)
R. Evid. 103(a)(1); *Gilbert v. State*, 598 P.2d 87, 92 (Alaska 1979) ("[T]he basic rule is that failure to object to offered evidence waives the objection.")).

[21] *See Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 328 (Alaska 2012) ("Even [if] admission of evidence is erroneous, we will reverse only if the error was not harmless." (citing *Brandner v. Hudson*, 171 P.3d 83, 87 (Alaska 2007))).

[22] Alaska R. Evid. 615(3).

[23] Alaska R. Evid. 615 commentary. The Ninth Circuit has noted that "[i]n many circumstances, a potential expert witness will be an 'essential party' within the meaning of [Federal Evidence] Rule 615(3)." *U.S. v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002).

Here it appears that Shover's presence was "important to the presentation" of Steward's case and there was no countervailing reason for the exclusion. Shover was the next witness to be called at trial and was prepared to offer expert testimony about the accident. Shover should have been allowed to hear Trooper Harris's testimony to verify Trooper Harris's testimony and finalize any opinions calling into question Trooper Harris's conclusions about the accident.

But even though excluding Shover was error, the error was harmless. Shover already had read Trooper Harris's affidavit and was familiar with Trooper Harris's observations and conclusions. Steward has not shown that Trooper Harris's testimony was different from his affidavit. Moreover, Steward had the opportunity to question Shover about Trooper Harris's testimony, allowing Shover to rebut anything that Trooper Harris said. Therefore, Steward has not shown that Shover's exclusion from the courtroom during Trooper Harris's testimony actually prejudiced Steward's case, and there is no basis to reverse the judgment.[24]

## V. CONCLUSION

Based on the foregoing, we AFFIRM the superior court's judgment.

---

[24] *Barton v. N. Slope Borough Sch. Dist*, 268 P.3d 346, 353 (Alaska 2012) ("[A] party must show that the error was harmful or prejudicial before we will reverse the trial court.").